IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE HOLMES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY | : | |
| ADMINISTRATION | : | NO. 13-cv-7616 |

ORDER

AND NOW, this day 14th day of March 2016, upon careful consideration of the Report and Recommendation filed by United States Magistrate Judge Lynne A. Sitarski ("R&R"), Doc. No. 18; Plaintiff's objections to the R&R, Doc. No. 19; Defendant's response thereto, Doc. No. 21; Plaintiff's Brief and Statement of Issues in Support of Request for Review, Doc. No. 9; and Defendant's response thereto, Doc. No. 14; as well as the entire record in this matter, it is hereby ORDERED as follows:

1. Plaintiff's objections to the R&R are OVERRULED.

2. The R&R is APPROVED and ADOPTED.

3. The decision of the Commissioner of the Social Security Administration is AFFIRMED.

4. Plaintiff's request for review is DENIED. Judgment shall be entered in this matter in favor of Defendant. The Clerk of Court is directed to close this matter for statistical purposes.

I.     Background

The procedural history and factual background giving rise to this action are set forth in the R&R of Magistrate Judge Lynne A. Sitarski ("MJ"), and need not be repeated. This Court approves and adopts the R&R and writes only to overrule the objections filed by Plaintiff.

II.    Standard of Review

A reviewing court must uphold the ALJ's decision if it is supported by "substantial evidence." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Id. (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). The Third Circuit has found that determining whether substantial evidence supports an ALJ's decision is not simply a quantitative exercise. Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Rather, substantial evidence "can only be considered as supporting evidence in relationship to all the other evidence in the record." Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981). The substantial evidence test will not be satisfied by a "single piece of evidence . . . if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence," nor will it be met when evidence "is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent, 710 F.2d at 114. In other words, the search for substantial evidence is a qualitative exercise. Id.

The Court must review de novo those issues addressed by the magistrate judge to which the Plaintiff objects. 28 U.S.C. § 636(b)(1). It may "accept, reject or modify, in whole or in part, the magistrate's findings and recommendations." Id.

III.   Discussion

The MJ found that the ALJ erred on two points: 1) determining that Plaintiff did not have a medically determinable impairment of the upper extremities at Step Two of the analysis, and 2) failing to consider the opinion of Dr. Goldstein with regard to Plaintiff's ability to lift and carry. R&R 19, 46. The MJ nevertheless recommended that the ALJ's decision be upheld, as each of the errors was harmless. R&R 20-22, 46-47. The MJ also noted that while the ALJ failed to perform a function-by-function residual functional capacity ("RFC") analysis, his analysis was sufficient under Third Circuit precedent.  R&R 22-28.

Plaintiff objects to these findings, and argues that the ALJ's errors were prejudicial, and when viewed together, would likely have changed the outcome of the decision if they had not occurred. Pl.'s Obj. 2, Doc. No. 19. Plaintiff also objects to the ALJ's evaluation of the medical opinions in this case, which the MJ found proper.[1] Pl.'s Obj. 12.

    A.    The ALJ's Step Two Determination

Plaintiff's objections to the R&R are primarily centered on the ALJ's consideration of evidence related to Plaintiff's upper extremities—particularly that if the ALJ had properly considered all the evidence, he would have found Plaintiff disabled. The first point of contention is the ALJ's insufficient Step Two determination, which the MJ determined was harmless error.[2] The Plaintiff contends that the MJ's reasons for finding an error at Step Two necessitate a finding that the ALJ's decision at Step Four was not supported by substantial evidence. In particular, Plaintiff seizes upon the evidence the ALJ did not consider at Step Two, and argues that it represents substantial evidence—such that the ALJ failed to support his RFC decision by

---

[1] Plaintiff also disputes the characterization of this matter as an "orthopedic" case, and argues that the non-examining orthopedists relied on by the ALJ were not the appropriate specialists. This argument was not presented to the MJ and thus will not be considered by this Court. See Kirk v. Meyer, 279 F. Supp. 2d 617, 619 (E.D. Pa. 2003) ("[A] district court may properly refuse to hear claims not first presented to the assigned Magistrate Judge."); Local R. Civ. P. 72.1, IV(c) ("All issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."). Further, the Court finds it too little, too late, to argue, after nearly twenty years of litigation, that this case should be reviewed by medical experts of a different, yet unidentified, specialty.

[2] A five-step sequential analysis is used to evaluate a disability claim:
> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform. The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step.

Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

"substantial evidence"—and that if credited, it would have compelled a finding of disability. Pl.'s Obj. 3-5. This argument lacks both factual and legal support.

The MJ found that the ALJ committed error in his Step Two analysis, but that such error was harmless. The Court agrees. At Step Two, the ALJ found that Plaintiff had the following severe combination of impairments: "degenerative disc disease and degenerative joint disease of the lumbar and cervical spine; and obesity." ALJ Dec. 744.[3] He found "little evidence" in the record to support a "medically determinable hand impairment for the relevant period," and did not consider further evidence relevant to Plaintiff's arms.[4] ALJ Dec. 745. In doing so, he disregarded Plaintiff's claims of "some upper extremity or hands and arm problems," R. 970, and did not examine evidence including: Dr. Sadek's treatment notes from April, 1996, which mention "arm pains due to job injury and repetitive arm movements," R. 364[5]; Dr. Sadek's diagnosis that Plaintiff has "multi-level cervical DJDT radiculopathy in both arms," R. 360; Dr. Hudrick's report from November, 1996, noting slightly reduced motor strength on the right upper extremity, R. 329; and physical therapist Lisa Giordano's functional capacity evaluation ("FCE") results noting "limited tolerance for overhead reaching" and below 1st percentile results on handling and dexterity tests, R. 351, 353. His failure to address this evidence as part of his seemingly arbitrary decision to restrict his consideration to Plaintiff's hands, render this aspect of his judgment improper. See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("[A]n administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests.").

---

[3] Citations to "ALJ Dec." refer to ALJ Javier A. Arrastia's April 19, 2013 decision, R. 741-53.
[4] The ALJ cited Plaintiff's testimony that "she had problems typing and picking up certain things with her hands," and that she visited orthopedist John Salvo, M.D., because of finger locking. ALJ Dec. 745.
[5] Citations to the administrative record will be indicated by "R ." followed by the page number.

However, the Court agrees with the MJ that the ALJ's analysis at Step Four effectively addressed any deficiency made at Step Two. See R&R 20 (citing Padilla v. Comm'r of Soc. Sec., No. 14–007, 2015 WL 1006262, at *9 (D.N.J. Mar. 6, 2015) (collecting cases) (finding that even if the ALJ erred in finding certain impairments to be non-severe, "any error would be harmless, because the ALJ found in favor of Plaintiff at step two . . . and ultimately considered the effect of the non-severe impairments in assessing Plaintiff's [RFC]"). At Step Four, the ALJ spent seven single-spaced pages reviewing the medical testimony in this case, including evidence related to whether Plaintiff had arm impairments, and how severe they were. In particular, the evidence the MJ found was missing at Step Two was considered and discounted at Step Four. At Step Four, the ALJ gave little weight to Dr. Sadek's findings, including his limitations on Plaintiff's upper extremities, as he found no documented objective signs or findings to support them. ALJ Dec. 749.[6] While the ALJ did not explicitly address Dr. Hudrick's notes identifying slightly reduced motor strength on the right upper extremity and slightly reduced motor skills (4+/5) in his discussion, he considered nearly identical evidence when he reviewed Dr. Sadek's finding of 4/5 motor strength. ALJ Dec. 748. Furthermore, the ALJ chose not to give full weight to findings in physical therapist Giordano's FCE, in part due to the fact that it was documented that Plaintiff did not put forth a full effort during the testing. ALJ Dec. 750. By contrast, the ALJ either gave great weigh to, or credited, the following information relevant to the existence of an upper-

---

[6] Plaintiff argues that the MJ's consideration of Dr. Sadek's testimony does not actually offer insight into the functioning of Plaintiff's upper extremities. Pl.'s Obj. 6. In the R&R the MJ quoted a paragraph of ALJ's discussion of Dr. Sadek's findings. The quote in full is:
> Although the claimant reportedly had pain with . . . repeated arm movements, there was no evidence that the claimant was evaluated for epidural injections, nerve blocks, or surgery. She had somewhat decreased reflexes in the arms, 4/5 motor strength, mildly reduced range of motion in the lumbar and cervical region, and normal sensation, station and gait. . . . Additionally, even though treatment notes occasionally mention muscle spasms, decreased range of motion, and decreased reflexes in the arms, I find no documentation of any trouble getting on/off an examining table, squatting, arising from a squat or chair, and walking on toes or heels.

R&R 21. It is plain that this information relates to Plaintiff's upper extremities, as it discusses her reported arm pain, and then compares it to the objective treatment given and objective findings in the record. Plaintiff's argument is without merit.

5

extremity limitation: Dr. Salvo's finding that Plaintiff's x-rays did not show anything "real severe" present, ALJ Dec. 748; Dr. Brahm's finding that Plaintiff could do light exertional activity with no additional limitations, ALJ Dec. 750; Dr. Hancock's finding that there was no documentation of atrophy, loss of muscle power, loss of sensation, reflex loss and little support for 15-year history of radiculopathy, ALJ 750; Dr. Hancock's finding that Plaintiff could do light exertion (which in his testimony he defined as a "full range of light really and with 20 pounds occasional and 10 pounds frequent [inaudible] (presumably lifting)," R. 1040), ALJ Dec. 750; Dr. Goldstein's finding that Plaintiff had "full motor strength, full grip strength, deep tendon reflexes of + 1 in the bilateral patellar and biceps areas, and no sensory deficits," ALJ Dec. 750; Dr. Goldman's finding that there was no evidence of atrophy, reflex deficits, and documented objective findings that would support Plaintiffs complaints of pain, ALJ Dec. 751; and Dr. Leland Patterson's opinion that Plaintiff was capable of medium work (defined, in relevant part, as: "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 404.1567(c)), ALJ Dec. 751.

     As illustrated above, the ALJ did consider the effect of any upper-extremity impairment in Plaintiff's RFC by thoroughly examining the medical evidence and discounting information which he determined was not supported by the record. See Scandone v. Astrue, No. CIV.A. 05-4833, 2011 WL 3652476, at *11 (E.D. Pa. Aug. 18, 2011) ("The ALJ is permitted to discredit limitations that are medically supported but are contradicted by other evidence in the record."). Plaintiff is incorrect to suggest the evidence was not considered, and that if it had been, the result would have been different.

     Plaintiff's argument also confuses the applicable standards. When an error is made in determining severe impairments at Step Two, the reviewing court looks to whether the ALJ

"ultimately considered the effect of the non-severe impairments in assessing Plaintiff's [RFC]." Padilla, 2015 WL 1006262, at *9. Plaintiff incorrectly attempts to characterize the evidence the ALJ did not consider at Step Two as "substantial evidence" such that the ALJ failed to support his Step Four decision by "substantial evidence." Pl.'s Obj. 3. However, not only was this evidence considered at Step Four, substantial evidence in the context of an ALJ decision does not mean some certain portion of evidence. Rather, substantial evidence is the amount of evidence necessary to support or justify the ALJ's determination. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). It may be satisfied even if it amounts to "somewhat less than a preponderance" of the evidence as a whole. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)).

Many of Plaintiff's objections come back to the sufficiency of Plaintiff's RFC, the ALJ's treatment of evidence on Plaintiff's upper extremities, and the limitations on lifting and carrying in the RFC. Plaintiff contends that had the ALJ correctly weighed the evidence, Plaintiff would have been found disabled. However, it is not the job of this court to reweigh the evidence before the ALJ; instead, "[w]here the ALJ's findings of fact are supported by substantial evidence [the court is] bound by those findings, even if [it] would have decided the factual issue differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

A review of the ALJ's Step Four determination shows that it was supported by substantial evidence. The ALJ determined that Plaintiff could perform a full range of "light work" as defined by the statute, with no additional restrictions on her upper extremities. Under 20 C.F.R. §

404.1567, light work contains lifting and carrying limitations of "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The Plaintiff argues that because the RFC contains no explicit limitations related to Plaintiff's upper extremities, the ALJ's decision cannot be supported by substantial evidence. Pl.'s Obj. 3-4. This argument is belied by the information cited above, which constitutes substantial evidence for the ALJ's determination that the restrictions inherent in "light work" are sufficient to address any upper extremity impairment the Plaintiff may have.

The only piece of probative information that the ALJ failed to explicitly discuss or implicitly discredit, was the carrying restrictions in Dr. Goldstein's check-box form. However, this error was harmless as we will address below. See Frazier v. Colvin, No. CIV.A. 13-3742, 2015 WL 4481248, at *6 (E.D. Pa. July 21, 2015) ("The ALJ must give some indication of the evidence which he rejects and the reason for discounting it.")

 In sum, substantial evidence supports the finding that Plaintiff could perform light work, with no additional limitations on upper extremities. Plaintiff's objection is overruled.

      B.      The ALJ's Failure to Conduct a Function-by-Function Analysis

The Plaintiff objects to the MJ's determination that, although the ALJ expressed the RFC in terms of the exertional category and did not perform a function-by-function analysis of the Plaintiff's abilities in his formulation of her RFC, remand was not required. Pl.'s Obj. 6. Plaintiff maintains that the deficient RFC analysis is compounded by the ALJ's failure to make explicit findings on the Plaintiff's upper extremity limitations, leaving a court unable to meaningfully review the ALJ's decision. Pl.'s Obj. 6-7. The Court agrees with the MJ.

The ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with only occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; frequent balancing; no climbing of ropes, ladders, or scaffolds; and

no exposure to unprotected heights or vibrations. ALJ Dec. 745.[7] As the MJ described, courts in the Third Circuit have found that, where the ALJ's determination is accompanied by a sufficient explanation, remand is not necessary for a failure to include a function-by-function analysis before determining the correct exertional category. See e.g., Bencivengo v. Comm'r of Soc. Sec., 2000 U.S. App. LEXIS 38785, at *4-*8 (3d Cir. Pa. Dec. 19, 2000); Vega v. Comm'r of Soc. Sec., 358 F. App'x 372, 375-76 (3d Cir. 2009); White v. Astrue, No. 12-1233, 2012 WL 1555399, at *9 (E.D. Pa. 2012); Long v. Astrue, No. 10-2828, 2011 WL 721518, at *2 (E.D. Pa. Feb. 23, 2011). Here, as described above, and after reviewing the totality of the ALJ's RFC determination, the Court agrees with the MJ that the ALJ's determination addressed all of the necessary factors. R&R 24-28. While a function-by-function analysis is desirable, remand is not required in this instance. As the Court does not agree with Plaintiff's characterization of the ALJ's RFC analysis, there is no further error here.

Plaintiff also more specifically challenges the MJ's conclusion that the ALJ adequately reviewed the evidence in the record as it relates to the lifting and carrying requirements in the RFC. Plaintiff argues that the ALJ did not address Dr. Goldstein's lifting and carrying limitations, and rejected Dr. Sadek's findings, leaving no other opinions in the record on which he could base his decision. Pl.'s Obj. 10. The Court disagrees. As previously described, there is evidence on the record relevant to Plaintiff's ability to lift and carry, and the ALJ determined that it was not sufficient to establish limitations beyond those contained in the "light work" exertional

---

[7]The full description of "light work" in the statute is as follows:
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

category. This decision is supported by substantial evidence. See ALJ Dec. 745-752. The ALJ's failure to fully discuss Dr. Goldstein's findings however, will be discussed more fully below.

Therefore, the Court overrules Plaintiff's objection.

C. The ALJ's Failure to Address Dr. Goldstein's Opinion

The MJ found that any error in addressing Dr. Goldstein's opinion was harmless, as it would not have changed the ALJ's determination that Plaintiff could perform her prior relevant work. R&R 46. We agree with the MJ, but for different reasons.

The ALJ summarized Dr. Goldstein's findings, including that Plaintiff had "full motor strength, full grip strength, deep tendon reflexes of + 1 in the bilateral patellar and biceps areas, and no sensory deficits," and that she was "able to do a range of *light work* with limited standing/walking, sitting 1-2 hours, occasional postural activities, no restriction on manipulative activities, and limited exposure to vibration and temperature extremes." ALJ Dec. 750 (emphasis added). The ALJ agreed with Dr. Goldstein's assessment that Plaintiff could do "light work" but did not find support "for the restrictions on standing, walking, and sitting in his exam findings." ALJ Dec. 750. As in other areas of his decision, the ALJ's reference to "light work" alludes to that term's definition in the statute, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. That categorization, however, is inconsistent with Dr. Goldstein's check-box opinion indicating that Plaintiff could only "occasionally" carry 10 pounds, rather than "frequently" as is required by 20 C.F.R. § 404.1567. R. 385. The ALJ's failure to address Dr. Goldstein's opinion was error. See Frazier, 2015 WL 4481248, at *8 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") (quoting SSR 96-8P). However, this error was ultimately harmless.

The ALJ determined that Plaintiff could perform two of her past positions, encoding operator and distribution clerk. ALJ Dec. 752. The Dictionary of Occupational Titles ("DICOT") definition of distribution clerk conflicts with Dr. Goldstein's carrying limitations because it requires "[e]xerting up to 20 pounds of force occasionally. . . and/or up to 10 pounds of force frequently." DICOT 216.382-026. Further, it is unclear whether, with Dr. Goldstein's limitations, Plaintiff could accomplish the duties of a distribution clerk as she actually performed the position. The MJ found that even with Dr. Goldstein's limitations, Plaintiff would have retained the ability to perform the job as she actually did it, because she testified that she only ever moved boxes weighing "four or five pounds." R&R 47 (citing R. 60). This Court's reading of Plaintiff's testimony does not support the MJ's finding. The Plaintiff testified that as a distribution clerk she would pick up boxes of work and carry it to the back of the office, do her work, and then take the box back out to the front of the office. R. 60. She stated that the she would move around 20 boxes full of checks a day, and that these boxes weighed between 5 and 7 pounds. R. 60. She further testified she spent around 80 percent of her day standing, and 20 percent sitting. R. 60. From this testimony, the Court cannot definitively conclude whether Plaintiff carried those boxes "occasionally" or "frequently." Thus, Dr. Goldstein's finding that Plaintiff could only "frequently" carry 2-3 pounds and "occasionally" carry 10 pounds may conflict with how Plaintiff actually performed her role as distribution clerk.

However, the ALJ's determination that Plaintiff could perform her previous work as an encoding operator would not have been affected by Dr. Goldstein's carrying limitations. Under the DICOT, Plaintiff's previous work as a coding clerk is sedentary, which requires only the ability to carry 10 pounds occasionally and exert a negligible amount of force frequently. See DICOT 206.387-010. Dr. Goldstein's lifting and carrying restrictions are consistent with this

position, and Plaintiff would have been able to perform her role as it was generally performed. Thus, even if the ALJ had credited Dr. Goldstein's finding, Plaintiff would still not have progressed to Step Five in the evaluation process and the ALJ's ultimate determination that Plaintiff was not disabled would remain. Accordingly, we agree with the MJ that remand is unnecessary on this point and Plaintiff's objection is overruled.

        D.        The ALJ's Weighing of Medical Opinions

Plaintiff objects to the MJ's determination that the ALJ properly evaluated the medical opinions in this case. Her first objection reiterates her argument that Dr. Sadek's findings were improperly rejected. Pl.'s Obj. 12-13. After our independent review, we agree with the MJ that the ALJ's determination regarding Dr. Sadek was supported by substantial evidence. The ALJ found that Dr. Sadek's treatment notes did not support the severe limitations he suggested were appropriate, his course of treatment was inconsistent with the limitations contained in his disability opinions, and, more generally, his opinions were unsupported by objective medical evidence and the record as a whole. See ALJ Dec. 748-49, 752; R&R. 34-40. While the Plaintiff may disagree with the ALJ's determinations, such findings are more than sufficient to satisfy the substantial evidence standard.

Plaintiff also reiterates her argument that the ALJ improperly rejected the opinions and findings of physical therapist Giordano. Pl.'s Obj. 13. After independent review of the record, the Court agrees with the MJ that the ALJ had substantial legal and factual support for how he chose to weigh Giordano's opinion, and the Court refuses to reweigh the evidence here. See R&R 41-44.

Finally, Plaintiff challenges the ALJ's treatment of Dr. Goldstein's opinions. Pl.'s Obj. 13-14. The Court agrees with the MJ that, beyond the carrying limitations discussed above, there was no further error in the ALJ's analysis of Dr. Goldstein's findings. The ALJ determined that

Dr. Goldstein's exam findings offered no support for the restrictions the doctor placed on Plaintiff's standing, walking, and sitting. ALJ Dec. 750. In coming to that conclusion, he specifically quoted Dr. Goldstein's findings to illustrate that they do not indicate restrictions are necessary. ALJ Dec. 750. The ALJ also noted that he found Dr. Goldstein's response on standing/walking in the questionnaire to be unclear. ALJ Dec. 750 n.1. Whether or not the Plaintiff, or the Court, agrees that Dr. Goldstein's markings were unclear, the ALJ specifically found that there was no support for restrictions in those areas in Dr. Goldstein's exam findings. ALJ Dec. 750. In other words, it did not matter for the ALJ's determination what box Dr. Goldstein checked, as the evidence the doctor adduced in his reports did not support limitations on standing or walking. ALJ. Dec. 750. Therefore, Plaintiff's objection is overruled.

IV.   Conclusion

For the foregoing reasons, Plaintiff's objections are hereby OVERRULED. The Court APPROVES and ADOPTS Lynne A. Sitarski's Report and Recommendation, and Plaintiff's request for review is DENIED.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.